IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

  Vs.                    No. 10-40009-01-SAC

ANDREW RUTHERFORD
a/k/a "Bucky",

        Defendant.

MEMORANDUM AND ORDER

The case comes before the court on the defendant's unresolved objections to the presentence report ("PSR") and the defendant's sentencing memorandum filed July 29, 2010, (Dk. 113). The defendant pleaded guilty to count one of the indictment that charged him with conspiracy to possess with intent to distribute 100 kilograms or more of marijuana. The PSR recommends a base offense level of 28 calculated from the marijuana seized in the traffic stop on May 24, 2009, and from the marijuana conversion of the cash seized in the traffic stop on October 16, 2009. The PSR recommends a four-level enhancement for being an organizer/leader of a drug operation involving at least five individuals

1

pursuant to U.S.S.G. § 3B1.1(a), comment. (n.4).  After a three-level acceptance of responsibility reduction, the defendant's total offense level is 29 with a criminal history category of three for an advisory guideline sentencing range of 108 to 135 months.  The addendum to the PSR sets forth three unresolved objections that the court will rule upon in this order.

**Defendant's Objection No. 1**:  The defendant contends his base offense level should be 26, as the PSR does not link him to the cash seized from co-conspirators Frank Lewis and Lorenzo Benton on October 16, 2009.  Should the court overrule that objection, then the court should convert the cash based on a Michigan marijuana price of $2,000 per pound and not the $400 per pound price used in the PSR.  According to the defendant, the court's granting of either objection results in a base offense level of 26.

**Ruling**:  Cash can be converted to drug quantities and attributed to defendant as relevant conduct if "the court finds by a preponderance that the cash is attributable to drug sales which were part of the same course of conduct . . . as the conviction count."  *United States v. Rios*, 22 F.3d 1024, 1027 (10th Cir. 1994).  The defendant does not dispute any of the facts stated in the PSR but challenges only whether they are sufficient to establish that the cash seized on October 16, 2009, is relevant conduct and

that the $400 per pound is an appropriate conversion price. The PSR sets forth that Frank Lewis and Lorenzo Benton were stopped in Missouri along Interstate 70 and found with $269,580 secreted in the side doors of a Chevrolet Tahoe **rented by the defendant Rutherford** on October 15, 2009. The PSR recounts other instances of Lewis and Benton being co-conspirators of Rutherford in the purchase and transportation of marijuana in 2008 and 2009. As part of his plea agreement, the defendant agreed to the following as part of the facts constituting the offense to which he was pleading guilty:

> The admissions of HUTCHINSON and BELL combined with the information developed by the DEA through its follow-up investigation of travel, financial, vehicle, and telephone records, and the later actions of RUTHERFORD, LEWIS, AND BENTON in August and October of 2009 demonstrate that RUTHERFORD, LEWIS, BENTON, PEARL, and others known and unknown, were associated and acting pursuant to an agreement to possess, transport, and distribute marijuana that was ongoing prior to, and continued subsequent to HUTCHINSON's and BELL's voluntarily involvement during approximately the first three months of 2009.

(Dk. 68, p. 15). Thus, a preponderance of evidence establishes that a conspiracy to distribute marijuana existed between Rutherford, Lewis and Benton continuing through October of 2009 and that the transportation of the money seized in October was pursuant to the same conspiracy as evidenced by its similarity to the conspiracy's pattern of prior trips between

3

Arizona and Detroit, by Lewis and Benton operating the vehicle containing such a large amount of cash, and by Rutherford financing and securing the transportation by renting the vehicle the day before the stop and seizure. The objection is overruled.

The PSR explains the cash was converted using the wholesale price of marijuana in Phoenix, Arizona as taken from the *National Drug Intelligence, 2009 National Illicit Drug Price list* obtained from the DEA. Based on the conspiracy as known and presented both in the PSR and in the factual basis of the defendant's plea, the court finds that the money was headed to Arizona to be used for the purchase of a large, wholesale amount of marijuana. Thus, for relevant conduct purposes, the money represented the amount of marijuana which the conspiracy intended to purchase and transport. Speculation over other possible uses and purposes of the money being transported does not defeat the reasonable inference drawn from the common schemes and plans followed by this drug conspiracy. The court overrules the defendant's objections.

**Defendant's Objection No. 2**: The defendant objects to the four-point organizer/leader enhancement arguing that the PSR does not show the drug operation involved at least five individuals.

**Ruling**: Section 3B1.1(a) instructs courts to increase by four levels the defendant's base offense level "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." The commentary to § 3B1.1 provides that "[a] 'participant' is a person who is criminally responsible for the commission of the offense." U.S.S.G. § 3B1.1 comment. (n. 1).

The burden of proving this enhancement by a preponderance of the evidence rests with the government. *United States v. Anderson*, 189 F.3d 1201, 1211 (10th Cir.1999). The PSR recommends the enhancement based on a finding of either a leader or organizer. This enhancement is intended to address "either the exercise of control over other participants or the organization of others for the purpose of carrying out the crime." *United States v. Tagore*, 158 F.3d 1124, 1131 (10th Cir.1998) (citations omitted).

"[T]he sentencing court should remain conscious that the gravamen of this enhancement is control, organization, and responsibility for the actions of other individuals, and the enhancement is not for important or essential figures." *United States v. Albers*, 93 F.3d 1469, 1488 (10th Cir. 1996) (quotations, citations, and emphasis omitted). That the defendant may be more culpable than another participant does not

necessarily trigger a U.S .S.G. § 3B1.1 enhancement, unless the culpability is the defendant's control or organization of others. "This means that the enhancement applies only when the defendant had 'decision-making authority or control over a subordinate.'" *United States v. Pena-Hermosillo*, 522 F.3d 1108, 1112 (10th Cir.2008) (quoting *United States v. Roberts*, 14 F.3d 502, 524 (10th Cir.1993)).

Application note four to U.S.S.G. § 3B1.1 identifies the following factors as relevant in deciding whether someone is a leader or organizer as opposed to a manager or supervisor: "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, comment. (n. 4). The enhancement for organizer is intended for someone who serves in "devising a criminal scheme, providing the wherewithal to accomplish the criminal objective, and coordinating and overseeing the implementation of the conspiracy." *United States v. Valdez-Arieta*, 127 F.3d 1267, 1272 (10th Cir.1997). "'An organizer arranges a number of people engaged in

separate activities into an essentially orderly operation.'" *United States v. Hutching*, 75 F.3d 1453, 1458 (10th Cir.) (quoting *United States v. Smith*, 24 F.3d 1230, 1233 (10th Cir.), *cert. denied*, 513 U.S. 905 (1994)), *cert. denied*, 517 U.S. 1246 (1996).

The defendant does not dispute any of the facts appearing in the PSR that bear on this enhancement. The defendant recruited Karen Hutchinson and approved of Jamie Bell's participation in the transportation of drugs. The defendant provided money to Hutchinson and arranged and financed the purchase of the vehicle and the horse trailer. Lorenzo Benton accompanied the defendant Rutherford during the purchase of the vehicle, and Frank Lewis sent a money gram on behalf of Rutherford to Hutchinson. Benton and Marcel Pearl had followed the subject vehicle to Arizona on one occasion, and Benton and Lewis followed on another occasion. Benton and Pearl also assisted in moving the subject vehicles once they reached their destination in Arizona. Rutherford financed the transportation of the participants, gave instructions on when and where to travel, oversaw the acquisition of rental units and rental vehicles, and arranged transportation to and from airports. From the undisputed facts in the PSR, the court is persuaded by a preponderance of the evidence that the

7

defendant organized, coordinated, financed, and directed a criminal activity involving five or more participants.  The defendant's objection is overruled.

**Defendant's Objection No. 3**:  The defendant objects to the three criminal history points recommended in ¶ 51 for his 1992 conviction for possession of a firearm in the commission of a felony.  The defendant argues he completed his sentence for that conviction by January of 1994, more than 15 years before his commission of the instant offense.  In his sentencing memorandum, the defendant cites Michigan statutes which he interprets as showing that he would have served this offense preceding the other sentences and that his pre-trial confinement time should have been credited to this sentence and not the other convictions.  Alternatively, the defendant argues the criminal history category of three over-represents the seriousness of his criminal past and the likelihood he will commit other crimes.

**Ruling**:  The guidelines instruct that three criminal history points are to be added for every prior sentence of imprisonment exceeding one year and one month.  U.S.S.G. § 4A1.1(a).  The guidelines include a staleness provision at U.S.S.G. § 4A1.2(e) that count prior sentences if "imposed within fifteen years of the defendant's commencement of the

instant offense" or if "resulted in the defendant being incarcerated during any part of such fifteen-year period" regardless of when imposed. The count of conviction charged a conspiracy commencing May 24, 2009, and the fifteen-year period would reach back to May 24, 1994. The defendant contests that he was incarcerated during that fifteen-year window on his prior sentence for possession of a firearm in case No. 92-06195. This conviction and sentence is summarized at ¶ 50 of the PSR. The Judgment of Sentence Commitment to Corrections Department signed by the circuit county court judge for that conviction confirms that the defendant was sentenced to two years' incarceration on January 29, 1993 and that his sentence commenced on January 29, 1993. The judgment also affirmatively states that the sentence was to be consecutive to the defendant's sentence in case No. 92-059246 imposed in October of 1992 and that pretrial confinement time would be credited to that case. The judgment provides that the "280 days credit to be applied to Jackson County File #91-59246. Felon Firearm consecutive to File #91-59246."[1] Thus, on the facts as stated in ¶ 50 and as appearing on the Judgment of

---

[1] The defendant cites this document in his sentencing memorandum. The court understands the PSR writer provided counsel with copies of this document and others relevant to this topic.

Sentence Commitment, the defendant was incarcerated on this sentence after May 24, 1994.

The defendant's arguments on Michigan law advanced in his sentencing memorandum are not well-founded. The defendant misreads MCL 750.227b(2) to apply in this case. This provision requires a sentence for felony firearm to be served prior to and consecutively with "any term of imprisonment imposed for the felony," MCL 750.227b(2), that is, "the underlying felony for a felony-firearm conviction." *People v. Bonham*, 182 Mich. App. 130, 137, 451 N.W.2d 530, 533 (Mich. App. 1989). Thus, this provision does not apply here, as the defendant's other felony sentences were not underlying felonies but were felony offenses committed nearly five months earlier in a different county and prosecuted in different courts. Additionally, the court is not persuaded by the defendant's cursory application of MCL 769.11b in arguing that the Michigan Circuit County Judge erroneously refused to give him credit for pretrial confinement in this case No. 92-06195. The value of this argument still depends upon MCL 750.227b(2) being applicable, and it's not. The undisputed facts appearing in ¶ 50 establish that the defendant's prior sentence comes within U.S.S.G. § 4A1.2(e)(1)'s window.

The court is not persuaded by the defendant's alternative argument of category three over-representing his criminal past or likelihood of recidivism. After serving approximately nine years of imprisonment for a drug trafficking conviction and a consecutive sentence on a firearm conviction, the defendant appears to have returned to the same criminal activities. According to the PSR at ¶ 19, the defendant told co-conspirator Hutchinson in 2009 that he had been dealing drugs with people in Arizona for the past ten years. Additionally, the facts surrounding the defendant's conviction for possessing a firearm involve a gun fight and the death of two individuals, including the defendant's brother. A criminal history category of three does not over-represent the seriousness of the defendant's criminal past or the likelihood of recidivism. This objection is overruled.

IT IS THEREFORE ORDERED that the defendant's unresolved objections and requests set forth in the PSR's addendum and argued in the defendant's sentencing memorandum (Dk. 113) are overruled and denied.

Dated this 2nd day of August, 2010, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge